UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ISRAEL FIGUEROA,                                    :
                                                    :
                    Plaintiff,                      :          **MEMORANDUM AND ORDER**
                                                    :          12-CV-4882 (WFK)
          -against-                                 :
                                                    :
CAROLYN W. COLVIN[1],                               :
Acting Commissioner of Social Security,             :
                                                    :
                    Defendant.                      :
-------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

This is a review of a denial of Supplemental Security Income ("SSI") by the
Commissioner of Social Security ("Commissioner"). Israel Figueroa ("Plaintiff") commenced
this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking
judicial review of a final decision the Commissioner which denied his application for SSI.
Before the Court are motions for judgment on the pleadings from both parties. For the reasons
set forth below, the Plaintiff's motion is DENIED, the Commissioner's cross-motion is
DENIED, and the case is REMANDED for review consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a fifty-two-year-old Hispanic man who was born on January 1, 1963 in Puerto

Rico. Dkt. 1 ("Compl.") at ¶9; Dkt. 12 ("P's Memo in Support") at 1. He attended school until

the ninth grade, at which point he left school and has not returned. Compl. at ¶10; Dkt. 21

("Admin. Record") at 42, 670. He held a variety of manual labor jobs between 1995 and 2008,

including as a furniture mover, a salesperson, a cashier, and a security guard. Compl. at ¶10;

Admin. Record at 320, 322, 384, 396-400. He has not been employed since 2008, when he quit

his job in construction because he felt weak and tired. P's Memo in Support at 2; Admin. Record

at 329.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security in February 2014, and
accordingly is the Defendant in this action. When the Court refers to the "Commissioner," the Court
refers to the office and to its occupant at the relevant time.

Plaintiff claims to suffer from various medical issues related to his back, including peripheral neuropathy, disc desiccation, compressed nerve roots, spinal canal stenosis, and a herniated disc. Compl. at ¶11; Admin. Record at 403-04, 633, 643, 701-02, 722, 724-27, 898-903, 936. The pain caused by these conditions has required Plaintiff to walk using a cane, to need to lie down during the day, and to have limited range of motion of his spine. Compl. at ¶12; Admin. Record at 700, 704, 712, 901, 937.

In addition to his spine conditions, Plaintiff has Hepatitis C, is human immunodeficiency virus ("HIV") positive, and claims to have suffered from psychiatric issues for years. *Id.* at ¶13-14; Admin. Record at 379, 419, 631, 635, 670-71, 899, 915. At various times, Plaintiff has been diagnosed with a depressive disorder, anxiety disorder, psychotic disorder, and a dysthymic disorder. Admin. Record at 422, 426-29, 905, 915. Plaintiff has attempted to commit suicide more than once. Compl. at ¶14; Admin. Record at 419-20, 455, 633, 670, 677. Plaintiff also has a past history of drug use, but has been enrolled in a methadone clinic since July 2010. Admin. Record at 420-22, 432, 631, 678, 700, 765, 833, 915, 926. As of the time Plaintiff filed this motion, he has remained in compliance with treatment. Compl. at ¶15.

Plaintiff applied for SSI on August 17, 2010, when he was forty-seven years old. Compl. at ¶4. After obtaining a full administrative review, Plaintiff's claim was denied in a decision after an administrative hearing on April 25, 2012. *Id.* at ¶2. The Social Security Appeals Council denied his request for review on August 1, 2012, making the April 25, 2012 decision the final decision of the Commissioner. *Id.*

Plaintiff filed his appeal from this denial of SSI in the district court on October 1, 2012. Compl. Plaintiff filed a motion for judgment on the pleadings on April 17, 2013. *See* P's Memo in Support. Plaintiff moves the Court to reverse the final decision of the Commissioner and

remand solely for the calculation of benefits. *Id.* at 17-19. Plaintiff moves for reversal on the grounds that (1) the ALJ incorrectly assessed the medical evidence from Plaintiff's treating physicians and (2) the ALJ incorrectly evaluated the Commissioner's proof that there were other jobs that Plaintiff could perform. *Id.* at 8-17.

Carolyn W. Colvin, Acting Commissioner of Social Security, ("Commissioner") filed a cross-motion for judgment on the pleadings on May 17, 2013. Dkt. 19 ("D's Cross-Motion"). Commissioner moves the court to affirm the final decision of the Commissioner. *Id.* at 48-49.

## DISCUSSION

### I.    Legal Standards

#### A.  Standard of Review

The Court's review of a final decision by the Commissioner "is a deferential one, limited to verifying that the correct legal standards were applied and that the decision is supported by substantial evidence in the record." *Geronimo v. Colvin*, 13-CV-8263, 2015 WL 736150, at *4 (S.D.N.Y. Feb. 20, 2015) (Carter, J.) (citing *Beauvoir v. Chafer*, 104 F.3d 1432, 1433 (2d Cir. 1997)) (internal quotation marks omitted). Substantial evidence must be "more than a mere scintilla," and has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)) (internal quotation marks and citation omitted). The plaintiff bears the burden of "establishing the existence of a disability." *Id.* (citations omitted). A lack of supporting evidence from the plaintiff will support a denial of benefits. *Id.* (citations omitted).

#### B.  Statutory and Regulatory Standards

In order to qualify for SSI, the Social Security Act requires that the claimant prove he has a disability. *See* 42 U.S.C. § 423(a)(1)(E). "Disability" is defined in the Social Security Act as

an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner must evaluate whether an individual qualifies as disabled using a five step process promulgated by the Social Security Administration ("SSA"):

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111-12 (2d Cir. 2010) (brackets and omissions in original) (citations omitted); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four in the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citations omitted). At step five, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant could perform even with his disability or disabilities. *Salmini*, 371 F. App'x at 112 (citation omitted); *see also Selian*, 708 F.3d at 418.

### C. The ALJ's Decision

In the April 25, 2012, decision denying Plaintiff's application for SSI, ALJ Lori Romeo ("the ALJ") found at step one that Plaintiff had not engaged in "substantial gainful activity since August 17, 2010," the date on which Plaintiff filed his SSI application. Admin. Record at 10. At step two, the ALJ determined that Plaintiff had the following severe impairments: HIV; Hepatitis C; lower back impairment; depressive disorder not otherwise specified; anxiety disorder not

—4—

otherwise specified; and polysubstance abuse in remission. *Id.* At step three, the ALJ determined, after analyzing the listings related to spinal disorders (Listing 1.04), liver diseases (Listing 5.05), HIV infections (Listing 14.08), and mental impairments (Listings 12.04 and 12.09), that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 10-12. At step 4, the ALJ determined that Plaintiff could not perform any of his past work because he can no longer do work that requires "light, medium, or heavy[] exertional levels." *Id.* at 18 (internal quotation marks omitted). Lastly, at step five, the ALJ determined that there are "jobs that exist in significant numbers in the national economy" that Plaintiff could perform. *Id.* at 19. On this basis, the ALJ denied Plaintiff's SSI application.

Plaintiff challenges the ALJ's analysis at steps three ("whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations") and five ("whether there is other work which the claimant could perform") of the evaluation process. *Salmini*, 371 F. App'x at 111-12 (2d Cir. 2010) (brackets and omissions in original) (citations omitted). Regarding step three, Plaintiff argues that the ALJ improperly evaluated the medical experts' testimony and that he should have been found to have both a physical and psychological impairment, each of which met or medically equaled the severity of one of the listed impairments. P's Memo in Support at 8-13; Dkt. 16 ("P's Memo in Opp.") at 1-6. Regarding step five, Plaintiff argues that the ALJ improperly considered the vocational expert's ("VE") testimony and therefore the Commissioner did not meet its burden to show there were jobs in the national economy that Plaintiff could perform. P's Memo in Support at 13-17; P's Memo in Opp. at 6-11. Plaintiff moves the Court to reverse the final decision of the Commissioner and to remand solely for the calculation of benefits. P's Memo in Support at 17-19.

The Commissioner's cross-motion responds to Plaintiff's arguments and moves for affirmance of the ALJ's decision. D's Cross-Motion at 48; Dkt. 20 ("D's Memo in Support") at 10. The Commissioner argues that the ALJ's decision at step three should be affirmed because the ALJ properly evaluated the medical experts' testimony and further correctly found that Plaintiff's depressive disorder did not meet or medically equal Listing 12.04. D's Cross-Motion at 35-45; D's Memo in Support at 1-7. The Commissioner also argues that the ALJ's decision should be affirmed because the ALJ correctly considered the VE's testimony at step five. D's Cross-Motion at 45-47; D's Memo in Support at 7-9.

The Court considers each of Plaintiff's arguments and the Commissioner's responses in turn.

## II.    Application

### A. Challenges to ALJ's Analysis of Whether Plaintiff has a Listed Impairment

Plaintiff's first challenge to the denial of SSI is that the ALJ improperly determined, at step three of the five step process, that Plaintiff's impairments did not meet or medically equal a listed disorder. P's Memo in Support at 8-10. Specifically, Plaintiff alleges that the ALJ improperly evaluated the medical evidence and had the evidence been properly evaluated, both Plaintiff's psychiatric and physical impairments independently, much less together, would have been found to meet or medically equal a listed disorder. P's Memo in Support at 10.

At step three, the ALJ must determine "whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations." *Salmini*, 371 F. App'x at 111. In evaluating the medical evidence before the ALJ in an effort to determine "the nature and severity of a claimant's impairments," 20 C.F.R. §404.1527(d)(2), "[t]he SSA recognizes a treating physician rule of deference to the views of the physician who had engaged

in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). "The opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian*, 708 F.3d at 418 (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Green-Younger*, 335 F.3d at 106-07); *see also* 20 C.F.R. §404.1527(c)(2) (The opinions of a treating source will only be given controlling weight by the reviewing ALJ if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record."); *Burgess*, 537 F.3d at 128 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with . . . the opinions of other medical experts.") (ellipses in original).

"In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also* 20 C.F.R. §404.1527(c)(2) (setting out the factors for the ALJ to consider in determining how much weight a treating physician's opinion should receive: the "length of treatment relationship and the frequency of examination," "[n]ature and extent of the treatment relationship," "[s]upportability," [c]onsistency . . . with the record as a whole," "[s]pecialization," and "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion"). Further, "ALJs should not rely heavily on the findings of consultative physicians after a single examination. *Selian*, 708 F.3d at 419.

Failure on the part of the ALJ to provide "good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing *Snell*, 177 F.3d at 133). Additionally, "[a]n ALJ's failure to reconcile such materially divergent [residual functional capacity ("RFC")] opinions of medical sources is [ ] a ground for remand. *Marchetti v. Colvin*, 13-CV-2581, 2014 WL 7359158, at *14 (E.D.N.Y. Dec. 24, 2014) (Matsumoto, J.) (internal quotation marks and citation omitted). "This is especially true where the ALJ discounts the opinion of the treating physician." *Id.* (citing *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009)).

### 1. ALJ's Evaluation of Dr. Leonard

Dr. Katherine Leonard, M.D., is Plaintiff's treating physician for his back pain. Compl. at ¶12. In the April 25, 2012, decision, the ALJ noted only that Dr. Leonard saw Plaintiff on both July 7, 2011, and December 22, 2011, although Dr. Leonard's first report indicates that she has been treating Plaintiff for eighteen months as of December 2011. Admin. Record at 16, 899. In addition, Dr. Leonard submitted a second report confirming the extent of Plaintiff's pain, movement limitations due to spine issues, and difficulty walking. *Id.* at 936-37. The ALJ explicitly considered only Dr. Leonard's first report in evaluating Plaintiff's physical impairments related to his ability to walk, stand, lift, grasp, push, pull, reach, squat, kneel, and turn. *Id.* at 15-16.

The ALJ, however, dismissed Dr. Leonard's diagnoses. In disregarding the analysis by Plaintiff's treating physician, the ALJ stated simply that "[l]ittle weight is given to this opinion because it is not supported by the medical records showing rather normal examinations . . . and the claimant's activities of daily living." *Id.* at 16 (internal citations to Admin. Record omitted). The ALJ further qualified her dismissal of Dr. Leonard's report by explaining that "the opinions

of the treating sources . . . are not well supported by the medical evidence of record, are not

supported by the claimant's statements regarding his activities of daily living, and are

inconsistent with the consultative examiners' findings. . . . Because the consultative examiners'

findings and opinions are more consistent with the record as a whole, more weight is given to

their opinions." *Id.* at 18. The ALJ made no other mention of Dr. Leonard's report, nor any

other specific doctor's report, according to the transcript of the hearing held on February 15,

2012. *Id.* at 32-92.

These few sentences are insufficient to qualify as a "comprehensive[] set[ting] forth [of]

reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129

(citations and quotation marks omitted). Comparing the ALJ's statement to the Second Circuit's

list of factors that an ALJ must explicitly consider, it is evident that the ALJ did not discuss the

"length, nature, and extent of treatment" or make any mention of "whether the physician is a

specialist" (which Plaintiff alleges she is, *see* P's Memo in Support at 10). *Selian*, 708 F.3d at

418. While the ALJ does list five places in the Administrative Record in which non-treating

physicians found nothing seriously wrong with the Plaintiff, the ALJ provides little explanation

for crediting the analyses of these doctors over those of Plaintiff's treating physician. Admin.

Record at 16. These sentences hardly seem to count as "explicitly considering" the "amount of

medical evidence supporting the opinion" or the "consistency of the opinion with the remaining

medical evidence." *Selian*, 708 F.3d at 418. The ALJ failed to provide adequately detailed

"good reasons" for according such limited weight to Dr. Leonard's opinion regarding Plaintiff's

disability related to his spine. *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing

*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

Because the ALJ has not discussed with any specificity the factors an ALJ must consider in evaluating a treating physician's report, the Court REMANDS this issue for further treatment by the ALJ.

## 2. ALJ's Evaluation of Dr. Guthrie

Dr. Clayton Guthrie, Psy. D., is Plaintiff's treating physician for his psychological conditions. Compl. at ¶14; Admin. Record at 905-11. Dr. Guthrie saw Plaintiff twice before issuing a report in which he diagnosed Plaintiff with a "depressive disorder, [Post Traumatic Street Disorder ("]PTSD["),] and a panic disorder." Compl. at ¶14. The ALJ considered Dr. Guthrie's opinion in analyzing Plaintiff's claim that he qualified for SSI due to a psychological condition. Admin. Record at 15-16, 18.

As with Dr. Leonard, however, the ALJ disregarded Dr. Guthrie's diagnosis. In addition to the ALJ's general statement regarding "opinions of the treating sources", the ALJ wrote that "[l]ittle weight is given to this opinion because Dr. Guthrie had very limited contact with the claimant." *Id.* at 16; *see also id.* at 18 ("[T]he opinions of the treating sources . . . are not well supported by the medical evidence of record, are not supported by the claimant's statements regarding his activities of daily living, and are inconsistent with the consultative examiners' findings. . . . Because the consultative examiners' findings and opinions are more consistent with the record as a whole, more weight is given to their opinions.").

Again, this falls short of what is required by the Social Security Act and by the Second Circuit. *See* 20 C.F.R. §404.1527(c)(2); *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129). The ALJ can only be said to have discussed the length and extent of treatment by Dr. Guthrie if the one sentence explicitly discussing Dr. Guthrie's opinion is read generously, and the ALJ certainly did not address "whether the physician is a specialist." *Selian*, 708 F.3d at 418

(citing *Burgess*, 537 F.3d at 129). When read with the few sentences generally dismissing the opinions of the treating sources, *see* Admin. Record at 18, this hardly seem to count as "explicitly considering" the "amount of medical evidence supporting the opinion" or the "consistency of the opinion with the remaining medical evidence." *Selian*, 708 F.3d at 418. The omission of any substantive discussion of these factors means the ALJ failed to provide adequately detailed "good reasons" for according such limited weight to Dr. Guthrie's opinion regarding Plaintiff's psychological disorder. *Burgess*, 537 F.3d at 129-30 (quotation marks omitted) (citing *Snell*, 177 F.3d at 133).

Because the ALJ has not discussed with any specificity the factors an ALJ must consider in evaluating a treating physician's report, the Court also REMANDS this issue for further treatment by the ALJ.

### B. Challenges to ALJ's Analysis of Whether There is Other Work Plaintiff Could Perform

Plaintiff's second challenge to the denial of SSI is that the ALJ improperly determined, at step five of the five step process, that the Commissioner had met her burden of showing that there were jobs in the national economy that Plaintiff could perform. P's Memo in Support at 14-17. Specifically, Plaintiff alleges that the ALJ improperly evaluated the vocational expert's testimony and had the testimony been properly evaluated, the ALJ would have determined that no jobs existed in the national economy that he could perform with his residual functional capacity ("RFC") and background. *Id.* at 17.

Under the final step of the evaluation process, the Commissioner bears the burden to show that "the claimant still retains a residual functioning capacity to perform alternative substantial gainful work which exists in the national economy." *Salmini*, 371 F. App'x at 112

(internal quotation marks and citations omitted). The burden is not a heavy one. "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's [RFC]." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). To make the determination under step five, the ALJ considers the claimant's RFC as established during the first four steps and "vocational factors [such as] age, education, and work experience." 20 C.F.R. § 416.920(g); *see also* 42 U.S.C. § 1382c(a)(3)(B). Therefore, a large part of the determination at step five is based on the RFC determination at steps one through four.

Given the dependency of the step five analysis on the ALJ's factual determinations regarding the Plaintiff's RFC at steps one through four, and the Court having already remanded for further analysis of the medical evidence at step three, the Court declines to reach Plaintiff's step five claim. The Court trusts that the ALJ will thoroughly review all relevant aspects of the administrative record on remand.

## CONCLUSION

Accordingly, on the basis of the record and law as set forth above, the Court DENIES both parties' motions for judgment on the pleadings and REMANDS this case for further proceedings consistent with this opinion.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: March 10, 2015
      Brooklyn, New York